**IT IS ORDERED as set forth below:**



**Date: September 30, 2020**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBERS** |
| | : | |
| JOSEPH H. HARMAN, | : | BANKRUPTCY CASE |
| | : | 11-67522-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| J. THOMAS MCAFEE III, in his capacity | : | ADVERSARY PROCEEDING |
| as Trustee of Marital Trust #2, | : | NO. 11-05534-LRC |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH H. HARMAN, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

## **ORDER**

Before the Court is the Partial Motion for Summary Judgment on Counts 3, 4, and 5 of Plaintiff's First Amended Complaint (Doc. 179) (the "Motion"), filed by Joseph H.

Harman ("Defendant"). The Motion raises in connection with an amended complaint filed by Carolyn T. McAfee, Executor of the Estate of James T. McAfee ("Former Plaintiff"),[1] seeking to determine a debt nondischargeable under 11 U.S.C. § 523(a)[2] and objecting to the Defendant's discharge under § 727(a)(2). This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(I); 1334.

## I. BACKGROUND

James T. McAfee ("McAfee") agreed to lend money to Carter Oak Crossing, Ltd. ("Carter Oak"), to refinance a shopping center in Gwinnett County, Georgia. (Harman Declaration, Doc. 179-1, at 59). On September 1, 1998, Defendant, as president of Carter Oak, signed a promissory note for $400,000.00 with an annual interest rate of 25% (the "Note"). (Note, Doc. 113-2, at 5). Defendant also signed a conditional guaranty that would make him liable under the Note if he engaged in "conversion, misappropriation, theft or embezzlement with respect to any money or other property of Maker by the undersigned in his capacity as an employee, officer, director, agent or employees of Maker" (the "Guaranty"). (Guaranty, Doc. 113-2, at 10).

### A. The State Court Action

In 2002, Carter Oak defaulted on the Note. (Harman Declaration, Doc. 179-1, at 60). On April 12, 2004, McAfee initiated an action against Defendant individually in the State Court of Fulton County, Georgia (the "State Court Action"). (*Id.* at 60-61). McAfee alleged that Defendant violated the terms of the Guaranty and sought to recover damages for breach

---

[1] All further references to § are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise noted.
[2] Thomas McAfee III has been substituted as plaintiff in this adversary proceeding by an order of the Court entered on September 29, 2020. (Doc. 223).

2

of contract, fraud, and attorney's fees. (*Id.* at 61). On November 3, 2004, months after initiating the State Court Action, McAfee passed away. (*Id.*). Former Plaintiff, McAfee's wife and executrix of his estate, was subsequently substituted as plaintiff in the State Court Action. (*Id.*).

On April 13, 2009, the State Court granted Former Plaintiff's motion for summary judgment "as to the issues of the Conditional Guaranty, attorney's fees and expenses of litigation" (the "State Court Judgment"). (State Court Judgment, Doc. 113-2, at 34). Former Plaintiff's claim for compensatory and punitive damages based on Defendant's alleged fraud remained pending. (*Id.*).

On February 4, 2011, after Defendant's unsuccessful appeal, (Court of Appeals Decision, Doc. 113-2, at 39), the parties entered a "Joint Stipulation of Fact and Dismissal with Prejudice of Count II (Fraud) of Plaintiff's Amended Complaint" (the "Stipulation"). (Stipulation, Doc. 114, at 8-10). Pursuant to the Stipulation, the parties agreed that Defendant owed $5,256,929.06 on the Note and Guaranty and $143,371.28 for attorney's fees. (*Id.* at 8). The Stipulation also provided that:

> [Former] Plaintiff hereby dismisses Count II of the Amended Complaint (for fraud) with prejudice, provided that the parties stipulate and agree that the dismissal of Count II . . . shall not be admissible (on the grounds of res judicata, estoppel, or otherwise) in any proceeding regarding the validity or dischargeability of Count I (Guaranty) and Count III (Attorneys' Fees) in the [Former] Plaintiff's Amended Complaint.

(*Id.* at 9). At the same time, the State Court entered a "Final Judgment" in favor of Former Plaintiff, awarding damages pursuant to the Stipulation. (Final Judgment, Doc. 114, at 7).

## B. Defendant's Bankruptcy

3

On June 11, 2011, Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition Date"). (Case No. 11-67522-LRC, Doc. 1). Former Plaintiff filed a proof of claim in Defendant's bankruptcy case on October 11, 2011, claiming a debt of $5,369,083.73 based on the Guaranty (the "Debt"). (Case No. 11067522, POC 1-1). On September 19, 2011, Former Plaintiff filed this adversary proceeding objecting to Defendant's discharge and seeking a determination that the Debt is nondischargeable. (Initial Complaint, Doc. 1). The Initial Complaint was then amended on February 14, 2014 (the "Amended Complaint"). (Amended Complaint, Doc. 113).

Counts 1 and 2 of the Amended Complaint objects to Defendant's discharge under § 727(a)(2) based on Defendant's alleged attempts to conceal assets from his creditors by transferring money to his wife and entities under Defendant's control within a year before filing bankruptcy. (Amended Complaint, Doc. 113, at 34-39). Counts 3, 4, and 5 involve the same facts that formed the basis of the State Court Judgment and seek a determination that the Debt is nondischargeable pursuant to §§ 523(a)(2), (a)(4), and (a)(6). (Amended Complaint, Doc. 113, at 39-46; State Court Judgment, Doc. 113, at 28-32). Specifically, Count 3 seeks a determination that the Debt is nondischargeable pursuant to § 523(a)(2) and alleges that Defendant represented to McAfee that:

> a. The Loan would be used only for certain expenses and costs related to the Refinancing;
> b. That all Net Cash Flow from the Shopping Center would be paid to McAfee before other creditors; and
> c. That no additional funds were needed to close the Refinancing.

(*Id.* at 39). The Amended Complaint further asserts that Defendant made these statements knowing that he intended to use the loan proceeds and the money generated from Carter

4

Oak for himself and entities under his control and that McAfee would not have lent the money to Carter Oak had he known Defendant's actual intentions. (*Id.* at 40-41).

Count 4 seeks a determination of nondischargeability under § 523(a)(4), alleging that between 1998 and 2004, Defendant transferred the money generated by Carter Oak, which was promised to McAfee, to Defendant and entities under his control, thereby triggering the Guaranty. (*Id.* at 41-44). The Amended Complaint further alleges that Defendant held $31,276 in trust on behalf of McAfee and has failed to account for that money. (*Id.* at 44).

Finally, Count 5 seeks a determination that the Debt is nondischargeable pursuant to § 523(a)(6) because Defendant converted money that he knew was owed to McAfee and that such conversion amounts to a willful and malicious injury. (*Id.* at 44-46). In particular, the Amended Complaint claims that Defendant converted the money generated from Carter Oak to himself and that Defendant used the loan proceeds to pay himself and Randy Seckman, a Carter Oak partner, $42,500 and $50,000, respectively. (*Id.* at 44-45).

## C. Mrs. McAfee's Transfer and Substitution

On March 24, 2018, Former Plaintiff filed a Motion to Substitute Party (Doc. 173) (the "Substitution Motion"), which stated that on January 11, 2017, Plaintiff transferred her interest in this case to her son, Thomas McAfee III, in his capacity as Trustee of Marital Trust #2 (the "Transfer"). (*Id.*). The Court initially declined to grant the Substitution Motion over Defendant's objection without additional information about the Transfer. Former Plaintiff then filed two affidavits on October 9, 2018 (Docs. 186, 187) (the "Affidavits"). Although there was no indication that these Affidavits were filed in support

5

of the Substitution Motion, the Court stated, through an order entered on February 5, 2020 (Doc. 204), that it would consider them in connection with the Substitution Motion. Then, after the parties had an opportunity to file additional briefing, the Court granted the Substitution Motion on September 29, 2020. (Doc. 223).[3] As a result, Thomas McAfee III, in his capacity as Trustee of Marital Trust #2 ("Plaintiff"), is the only named plaintiff in this adversary proceeding.

Through the Motion, Defendant argues that the Transfer violated O.C.G.A. § 44-12-24, which prohibits the assignment of personal torts and fraud-based claims, and therefore, Plaintiff cannot pursue Counts 3, 4, and 5 of the Amended Complaint. (Doc. 179-1, at 41-52). Defendant further argues that, due to the Transfer, neither Plaintiff nor Former Plaintiff may enforce those claims. (Defendant's Post-Hearing Brief, Doc. 196, at 15). In response, Plaintiff contends that the Transfer was not an assignment, but rather an assent pursuant to McAfee's last will and testament ("McAfee's Will"),[4] making O.C.G.A. § 44-12-24 inapplicable. (Response in Opposition, Doc. 184, at 2-9). Alternatively, Plaintiff contends that even if the Transfer constitutes an assignment, Counts 3, 4, and 5 of the Amended Complaint were assignable notwithstanding O.C.G.A. § 44-12-24, because those claims involve a right to property rather than a right of action for personal torts or for injuries arising from fraud. (*Id.* at 9-12). Finally, Plaintiff argues that even if Counts 3, 4,

---

[3] The Court, also on September 29, 2020, vacated a previous order (Doc. 197) granting Defendant's Motion. (Doc. 223). The Court had granted Defendant's Motion because, as a result of the Transfer, the named plaintiff in the adversary proceeding—i.e. Former Plaintiff—no longer owned the Debt giving rise to the nondischargeability claims. However, because the Court granted the Substitution Motion and because the named plaintiff in this adversary proceeding—i.e. Plaintiff—now owns the Debt, the Court concluded that it should vacate its prior order and reconsider Defendant's Motion.

[4] McAfee's Will is included as an exhibit to Plaintiff's response to Defendant's Motion. (Doc. 184-1).

6

and 5 of the Amended Complaint were unassignable, Former Plaintiff can continue to pursue those claims because transfers in violation of O.C.G.A § 44-12-24 are void. (*Id.* at 13).

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by operation of Federal Rule of Bankruptcy Procedure 7056, the Court will grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hairston v. Gainesville Sun Publ'shg Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982).

To determine whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* FED. R. CIV. P. 56(e).

The Motion raises three issues: (1) whether the Transfer was an assignment under Georgia law; (2) if so, whether Former Plaintiff could transfer the claims asserted in Counts 3, 4, and 5 to Plaintiff under Georgia law; and, if not, (3) the consequences of the attempt to assign the claims.

### A.    Whether the Transfer was an Assignment

Plaintiff maintains that O.C.G.A. § 44-12-24 is inapplicable because the Transfer to Martial Trust #2 was an assent pursuant to the terms of McAfee's Will. Plaintiff insists that an assent is distinguishable from an assignment, citing O.C.G.A. § 53-8-15(a), which provides that "title to property in the estate does not pass to the heirs or beneficiaries until the personal representative assents thereto in evidence of the distribution of the property to them." Plaintiff contends that distinguishing between an assent and an assignment is also consistent with Georgia's survival statute, O.C.G.A. § 9-2-41, which provides that a decedent's tort claims do not abate upon death and may be pursued by the decedent's personal representative. Plaintiff argues that the survival statute's transfer of claims from decedent to personal representative "strongly implies that the Georgia legislature realized that transfers of claims incident to death and the administration of an estate are exempt from the anti-assignment language of O.C.G.A. § 44-12-24."

Plaintiff's attempt to distinguish an assent from an assignment is unpersuasive. First, O.C.G.A. § 44-12-24 codifies the common law prohibition on assigning personal injury and fraud claims. *See Carter v. Banks*, 330 S.E.2d 866, 868 (Ga. 1985). Statutes in derogation of the common law, such as those that make personal injury and fraud claims assignable, must be strictly construed. *See Heard v. Neighbor Newspapers, Inc.*, 383 S.E.2d

8

553, 554 (Ga. 1989). Though O.C.G.A. § 53-8-15(a) uses the term "assent" instead of transfer or assignment, there is no language to suggest that the statute was intended to create an exception to the common law prohibition on assigning claims. *See State v. Hudson*, 812 S.E.2d 270, 275 (Ga. 2018) (recognizing that the General Assembly does not "'hide elephants in mouseholes'" (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Likewise, Georgia's survival statute does not support Plaintiff's construction. On the contrary, O.C.G.A. § 9-2-41 provides that "in the event there is no right of survivorship in any other person, [the decedent's claims] shall survive to the personal representative of the deceased plaintiff." Thus, the decedent's torts may be pursued by the estate's personal representative, but not by heirs or a devisee under the will. *See Walden v. John D. Archbold Mem'l Hosp., Inc.*, 398 S.E.2d 271, 274 (Ga. Ct. App. 1990) (finding that patient's cause of action for negligence and malpractice vested in the administrator of his estate, not his heirs), *abrogated on other grounds by First Christ Holiness Church, Inc. v. Owens Temple First Christ Holiness Church, Inc.*, 655 S.E.2d 605 (Ga. 2008). Although Former Plaintiff was free to pursue these claims as personal representative of McAfee's estate, she could not pass off that responsibility to Plaintiff without either substituting him as personal representative or assigning the claims to him or a trust, and she chose the latter.

### B.   Validity of Former Plaintiff's Transfer

Defendant argues that O.C.G.A. § 44-12-24, which limits the assignment of certain causes of action, prevented Former Plaintiff from assigning the claims asserted in Counts 3, 4, and 5 to Plaintiff. *See generally Daniels v. Howe Law Firm (In re Daniels)*, 591 B.R.

9

814, 826 (Bankr. N.D. Ga. 2018); *GE Mortgage Services, LLC, v. Johnston (In re Johnston)*, 2007 WL 7141849, at *2 (Bankr. N.D. Ga. May 25, 2007); *Cadlerock Joint Venture, L.P. v. Pittard (In re Pittard)*, 358 B.R. 457, 461-62 (Bankr. N.D. Ga. 2006). Under O.C.G.A. § 44-12-24, "a right of action is assignable if it involves, directly or indirectly, a right of property," but "a right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned." Plaintiff responds that the claims asserted in Counts 3, 4, and 5 involve a right of property and, therefore, are assignable.

Whether Former Plaintiff could have assigned the claims asserted in Counts 3, 4, and 5 depends on whether those claims involve a "right of property," "personal torts," "or [] injuries arising from fraud to the assignor." O.C.G.A § 44-12-24. Although the statute does not define a "right of property," Georgia courts have explained that a claim that involves fraudulent conduct or a personal injury may still be a right of action that involves, directly or indirectly, a right of property. For example, in *Information Buying Company v. Morgan*, 147 S.E. 128 (Ga. Ct. App. 1929), Mr. Morgan agreed to transfer his salary to Salary Investment Company ("SIC"). *Id.* at 128. However, when Mr. Morgan collected the promised salary, he appropriated it for his own use. *Id.* SIC assigned its claim to Information Buying Company ("IBC"), which filed suit. *Id.* The trial court entered judgment in favor of Mr. Morgan, finding that IBC lacked standing because the claim was based on fraud and, therefore, unassignable. *Id.* The Georgia Court of Appeals reversed, explaining that:

10

> Although the assignor's act in collecting the salary which he has assigned, and in converting it to his own use, may be a fraud upon the assignee, the assignee's right to recover of the assignor for damage arising out of such conduct is not a right arising out of fraud on the assignee. It is a right to recover, not for an injury resulting from fraud alone, but for an injury to the assignee's property right in the fund assigned.

*Id.*

Here, in Count 3, Plaintiff seeks a determination of nondischargeability under § 523(a)(2)(A) based on the misrepresentations Defendant made to McAfee to secure financing. (Amended Complaint, Doc. 113, at 39-41). Because Plaintiff's recovery is based on Defendant's fraudulent conduct, Count 3 falls under O.C.G.A. § 44-12-24 and could not have been assigned. *See In re Pittard*, 358 B.R. at 460-461; *In re Johnston*, 2007 WL 7141849, at *2; *In re Daniels*, 591 B.R. at 826 ("the debt cannot be of the kind specified under § 523(a)(2) because the undisputed facts demonstrate that any claim held by Network against Plaintiff for fraud was not originally owed to Network, and Georgia law does not permit the assignment of fraud claims.").

Count 4, which asserts a claim under § 523(a)(4), is more complicated. On the one hand, § 523(a)(4) provides that a debt is nondischargeable if it arose from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To the extent that Plaintiff asserts that Defendant owes a debt due to Defendant's fraud while acting in a fiduciary capacity, Count 4 relies on Defendant's fraudulent conduct and is, therefore, unassignable. *See In re Johnston*, 2007 WL 7141849, at *2. Similarly, embezzlement and larceny claims both require proof that the debtor engaged in fraud and thus are unassignable. *See Andrews v. Wells (In re Wells)*, 368 B.R. 506, 514 (Bankr. M.D. La.

11

2006) ("For the purposes of section 523(a)(4), embezzlement is defined as '[t]he fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come....' To establish a claim of embezzlement under section 523(a)(4), the plaintiff must prove that: (1) the debtor appropriated the funds for his own benefit; and (2) the debtor acted with fraudulent intent or deceit. Larceny is defined as the 'fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property.'" "Fraudulent intent is essential to both larceny and embezzlement.") (quoting *DiCrispino v. Adams (In re Adams)*, 348 B.R. 368, 373 (Bankr. E.D. La. 2005)); *Kaye v. Rose*, 934 F.2d 901, 903 ("Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with *fraudulent intent* taken property from its owner.") (emphasis added) (7th Cir. 1991).[5]

On the other hand, Count 4 also seeks a determination that the debt is nondischargeable because Defendant committed a defalcation while acting in a fiduciary capacity. Defalcation "refers to the failure to produce funds entrusted to a fiduciary." COLLIER ON BANKRUPTCY ¶ 554.02[3] (Richard Levin & Henry J. Sommer eds., 16th ed.). As the Supreme Court explained in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), defalcation "may be used to refer to *nonfraudulent* breaches of fiduciary duty." *Id.* at 275. Plaintiff alleges that Defendant held $31,276 on behalf of Mr. McAfee and failed to account for that money. (Amended Complaint, Doc. 113, at 43). As in *Info. Buying Co.*,

---

[5] The definitions of larceny and embezzlement under § 523(a)(4) are determined by federal common law. *Griff v. Marsh (In re Marsh)*, 449 B.R. 431, 437 (Bankr. N.D. Ga. 2011); *In re Wells*, 368 B.R. at 514.

12

Plaintiff's defalcation claim alleges an injury to Plaintiff's property interest in the $31,276 and is, therefore, a cause of action involving a right of property. As such, the claim asserted in Count 4 was assignable to the extent that it is based on Defendant's defalcation while acting in a fiduciary capacity.

Likewise, Count 5, in which Plaintiff seeks a determination that the debt owed is nondischargeable under § 523(a)(6), is also assignable. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity *or to the property* of another entity." (emphasis added). Proof of fraud is not necessary under § 523(a)(6). *See Baltimore County Savings Bank v. Malinowski (In re Malinowski)*, 249 B.R. 672, 675 (Bankr. D. Md. 2000) ("fraud is not a necessary element of proof in an action brought under Section 523(a)(6)."). Count 5 is based on Defendant's conversion of the following funds: (1) the Net Cash Flow, including $31,276 transferred to a company allegedly owned by Defendant, and (2) the converted loan proceeds, including $42,500 and $50,000 that were owed to McAfee that Defendant paid to himself and Mr. Seckman, respectively. (Amended Complaint, Doc. 113, at 45).

The claim asserted in Count 5 is similar to the claim addressed in *Lumpkin v. Am. Sur. Co.*, 7 S.E.2d 687 (Ga. Ct. App. 1940). In *Lumpkin*, a bank teller was accused of stealing money from a bank, and the bank assigned its claim to its insurer. *Id.* at 687-88. The teller insisted that, since he had no contractual relationship with the insurer, the claim was based only on his fraudulent conduct and the claim could not be assigned. *Id.* at 688. The court disagreed, finding the right to recover was based on the bank's property interest in the stolen money and was therefore a claim that involved a property right. *Id.* As in

13

*Lumpkin*, the basis for Count 5 is Plaintiff's interest in money that was allegedly converted by Defendant. The fact that Count 5 is not limited to a specific sum of money is immaterial. Neither *Lumpkin* nor any case brought to the Court's attention, limits a right of property to only claims that involve a sum certain. *See id.*; *see also Villanueva v. First Am. Title Ins. Co.*, 721 S.E.2d 150, 153 (Ga. Ct. App. 2011) (finding that a legal malpractice claim, based on the theft of "more than $500,000" was assignable as a right of property), *aff'd*, 740 S.E.2d 108 (Ga. 2013).[6] Thus, because Count 5 is based on Defendant's willful and malicious injury to Plaintiff's right of property in the money generated by Carter Oak and the loan proceeds, it was assignable.

## C. The Consequences of the Transfer

Because Count 3 and Count 4, to the extent they are based on embezzlement and larceny, were not assignable under Georgia law, the claims in those counts were not assigned to Plaintiff as a result of the Transfer. Further, because Former Plaintiff is no longer a party to this adversary proceeding, due to the Court's granting of the Substitution Motion, Defendant is entitled to judgment as a matter of law as to these claims and the Court need not address the effect O.C.G.A. § 44-12-24 has on Former Plaintiff's attempted transfer of these unassignable nondischargeability claims to Plaintiff. Finally, because Count 4, to the extent that it is based on a defalcation while acting in a fiduciary capacity, and Count 5 were assignable under Georgia law, those claims were assigned to Plaintiff

---

[6] Though *Villanueva* was later abrogated through the amendment of O.C.G.A. § 44-12-24, which now provides that a right of action based on legal malpractice is unassignable, the court's holding on what constitutes a right of property remains good law.

and he may pursue them against Defendant in this adversary proceeding as substituted plaintiff.

### III.  CONCLUSION

For these reasons, the Court finds that the undisputed facts support Defendant's request for summary judgment on Count 3 and Count 4, to the extent they are based on embezzlement and larceny, and that Defendant is entitled to judgment as a matter of law on these claims. As for the claims asserted in Count 4, to the extent that they are based on a defalcation while acting in a fiduciary capacity, and Count 5, the Court finds that Defendant is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Partial Summary Judgment Motion is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that pursuant to O.C.G.A. § 44-12-24, Count 3 and Count 4, to the extend it is based on embezzlement and larceny, were not assigned to Plaintiff as a result of the Transfer. Thus, Defendant is entitled to judgment as a matter of law on these claims.

**IT IS FURTHER ORDERED** that Count 4, to the extent that it is based on a defalcation while acting in a fiduciary capacity, and Count 5 were assigned to Plaintiff as a result of the Transfer. Thus, Defendant is not entitled to judgment as a matter of law on these claims.

**[END OF DOCUMENT]**

**Distribution List**

**James L. Paul**
Chamberlain, Hrdlicka, White
46th Floor
191 Peachtree Street NE
Atlanta, GA 30303-1410

**Kevin R. Armbruster**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street, NE
Atlanta, GA 30303

**Jason C. Grech**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street, NE
Atlanta, GA 30303

**Derek S. Littlefield**
Cushing Morris Armbruster Montgomery LLP
Suite 4500
191 Peachtree Street, N.E.
Atlanta, GA 30303

**Gary W. Marsh**
Dentons US, LLP
Suite 5300, One Peachtree Center
303 Peachtree Street
Atlanta, GA 30308

**David E. Gordon**
Dentons US LLP
Suite 5300
303 Peachtree Street, NE
Atlanta, GA 30308

**J. Carole Thompson Hord**
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, NE
Suite 800
Atlanta, GA 30309-4516

**Karen Fagin White**
Cohen Pollock Merlin & Small
Suite 1600
3350 Riverwood Parkway
Atlanta, GA 30339-6401

**Johannes S. Kingma**
Carlock, Copeland & Stair, LLP
191 Peachtree Street, NE
Suite 3600
Atlanta, GA 30303-1740