**IT IS ORDERED as set forth below:**



**Date: March 12, 2021**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBERS** |
| | : | |
| JOSEPH H. HARMAN, | : | BANKRUPTCY CASE |
| | : | 11-67522-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| JAMES T. McAFEE, III, | : | ADVERSARY PROCEEDING |
| | : | NO. 11-05534-LRC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH H. HARMAN, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

## <u>ORDER</u>

Before the Court is a _Partial Motion to Dismiss First Amended Complaint_ (Doc.

133) (the "Motion") filed by Joseph H. Harman ("Defendant"). The Motion seeks dismissal

of certain counts of an amended complaint (Doc. 113) (the "Amended Complaint") filed by

Carolyn T. McAfee, as Executor of the Estate of James T. McAfee ("Former Plaintiff"), which seeks a determination that a debt is nondischargeable pursuant to 11 U.S.C. § 523(a) and objects to Defendant's discharge pursuant to 11 U.S.C. § 727(a).[1] This matter constitutes a core proceeding over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(I), (J); § 1334.

I.    Background and Introduction

On June 14, 2011, Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition Date"). (Case No. 11-67522-LRC, Doc. 1). On October 11, 2011, Former Plaintiff filed a proof of claim in Defendant's bankruptcy case claiming a debt of $5,369,083.73 (the "Debt") based upon a Final Judgment entered against Defendant in the State Court of Fulton County on February 4, 2011. *See* Doc. 114, pp. 6-7. On September 19, 2011, Former Plaintiff initiated this adversary proceeding by filing a complaint (Doc. 1) (the "Initial Complaint"). Count 1 of the Initial Complaint objected to Defendant's discharge under §§ 727(a)(2) and (a)(7) while Counts 2, 3, and 4 of the Initial Complaint sought a nondischargeability determination under §§ 523(a)(2), (a)(4), and (a)(6) respectively. *See* Initial Complaint, ¶¶ 70-134. In Count 1, the Initial Complaint asserted two reasons to deny Defendant's discharge: (1) Defendant testified at his § 341 meeting of creditors that he transferred approximately $3,300 to his wife shortly before the Petition Date to avoid the funds being garnished by Former Plaintiff (the "$3,300 Transfer"); and (2) Defendant had, in connection with a case of an insider, committed acts

---

[1] All further references to § are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise noted.

referred to in §§ 727(a)(3), (a)(4), and (a)(5) and was therefore not entitled to a discharge under § 727(a)(7).[2] *See id.* at ¶¶ 70-81.

On December 31, 2013, Former Plaintiff filed a *Motion for Leave to File First Amended Complaint* (Doc. 106) (the "Motion for Leave to Amend"). Defendant did not oppose the Motion for Leave to Amend, and the Court granted it on February 6, 2014. *See* Doc. 110. Thereafter, on February 19, 2014, Former Plaintiff filed the *First Amended Complaint* (Doc. 113) (the "Amended Complaint"). The Amended Complaint reasserts the claims made in the Initial Complaint and adds additional grounds to deny Defendant's discharge under § 727(a). These new grounds for denial of Defendant's discharge include:

1. On May 25, 2011, a large apartment complex in Blacksburg, Virginia, known as Terrace View, sold for approximately $53,300,000. Due to Defendant's 100% ownership interest in J.H.H. Holdings Corporation ("JHH") and First Equities Partners II ("FEPII"),[3] Defendant was entitled to receive a distribution of

---

[2] Regarding the § 727(a)(7) claim, the Initial Complaint alleged that Debtor failed to keep or preserve recorded information from which Concord GP, Inc.'s (an alleged insider entity that was a separate debtor in Case No. 11-68707-MHM) financial condition could be ascertained and failed to satisfactorily explain the loss of $31,267 in Concord GP, Inc's bankruptcy case. *See* Initial Complaint, ¶¶ 77-81.

[3] The Amended Complaint contends that an attempted transfer of Defendant's stock in JHH and FEPII in 2001 was "void ab initio as an act in violation of the automatic stay" because it occurred during Defendant's prior bankruptcy case. *See* Amended Complaint, ¶¶ 28-30. Thus, the Amended Complaint alleges that Defendant's wife "was not entitled to [the] Terrace View Funds because [] she did not own any of the stock in JHH/FEPII at the time of the Terrace View Sale." *See id.* at ¶ 28. As noted below, for purposes of ruling on the Motion, the Court must accept as true all factual allegations set forth in the complaint and, on the basis of those facts, determine whether the plaintiff is entitled to the relief requested. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007)*; Daewoo Motor America Inc. v. General Motors Corp.*, 459 F.3d 1249, 1271 (11th Cir. 2007). Thus, the Court will accept as true the allegation that Defendant's wife "was not entitled to [the] Terrace View [sale proceeds]."

3

approximately $1.7 million from the Terrace View sale proceeds.[4] To avoid these funds being made available to his creditors, however, Defendant caused the approximately $1.7 million to be transferred to his wife (the "Terrace View Transfer"). *See* Amended Complaint, at ¶¶ 22-51, 142-46.

2.  Defendant was also entitled to receive a distribution of $257,256 from the Terrace View sale proceeds due to Defendant's limited partnership interest in New River Valley Associates, Ltd ("NRV"). On May 25, 2011, Defendant caused the $257,256 to be transferred to the escrow account of Shadrix Lane, P.C.—a law firm Defendant had no prior dealings with—rather than transferred to Smith Conerly, LP's escrow account to avoid the funds being garnished by Former Plaintiff pursuant to a garnishment action Former Plaintiff had filed against Smith Conerly, LP on April 20, 2011 (the "NRV Transfer"). *See id*. at ¶¶ 52-57, 147-50.

3.  On May 26, 2011, Shadrix Lane, P.C. transferred $89,202.18 of the $257,256 NVR funds to Smith Conerly, LP (the "Smith Conerly Transfer"). *See id.* at ¶¶ 58-59, 151. In Defendant's bankruptcy schedules and statement of financial affairs, Defendant disclosed that Shadrix Lane, P.C. was holding $168,053.87 of the NRV funds, but

---

[4] The Amended Complaint also contends that a purported assignment dated January 15, 1990 (the "1990 Assignment"), wherein JHH and FEPII assigned to Defendant's wife "all of [their] rights and interests in their direct and indirect investment properties' refinancing and resale proceeds," "is a tool of fraud because it surfaced only during preparations for the Terrace View sale and only after [Defendant] exhausted all efforts to prevent Plaintiff from collecting her $5 million state court judgment." *See* Amended Complaint, ¶¶ 36-37. Thus, the Amended Complaint contends that Defendant's wife "cannot claim [the Terrace View sale proceeds] pursuant to the so-called '1990 Assignment.'" *See id*. at ¶ 35. Instead, the Amended Complaint contends that Defendant "was entitled" to receive the "approximately $1.7 million from the Terrace View sale" due to his "100% ownership of JHH/FEPII." *See id*. at ¶¶ 27, 142. For purposes of ruling on the Motion, the Court must accept as true the allegation that Defendant's wife was not entitled to receive the Terrace View sale proceeds. *See Bell Atl. Corp.*, 550 U.S. at 554-56*; Daewoo Motor America Inc.*, 459 F.3d at 1271.

4

did not disclose the Smith Conerly Transfer or account for the $89,202.18 transferred to Smith Conerly, LP. According to Defendant, the Smith Conerly Transfer was to be used as a retainer for services to be rendered in Defendant's bankruptcy case. However, Smith Conerly, LP's disclosure of compensation filed with the Court only reported that $25,000 had been received from Defendant. *See id.* at ¶¶ 60-65, 151.

4.  On December 1, 1997, the Linda J. Harman Irrevocable Trust (the "Trust") was created with Defendant serving as the sole trustee. The primary asset of the Trust is a 99% membership interest in FCGI Associates, LLC ("FCGI"). Defendant is the sole manager of FCGI, which owns and operates income producing properties. The Trust assets are used to pay for Defendant's lifestyle and to fund Defendant's business investments. Defendant has used the Trust to hide the value of FCGI and the income it has generated over the years from Defendant's creditors. Defendant has also diverted the fruits of his labor to the Trust for the purpose of concealing his wealth from creditors. *See id*. at ¶¶ 66-76, 152-57.

In the Motion, Defendant contends that, because the Amended Complaint was filed after the deadline to object to Defendant's discharge had expired, the new allegations contained in the Amended Complaint are time-barred pursuant to Rule 4004(a) of the Federal Rules of Bankruptcy Procedure. On May 5, 2014, Former Plaintiff filed a response in opposition to the Motion (Doc. 139) (the "Response") contending that: (1) the Amended Complaint relates back to the filing of the Initial Complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure; and (2) even if the Amended Complaint does not relate

5

back to the Initial Complaint, the Motion should nonetheless be denied because: (A) Defendant waived the right to raise a statute of limitations defense by not objecting to Former Plaintiff's Motion for Leave to Amend; and (B) cause exists to extend the time to object to Defendant's discharge pursuant to Rule 4004(b)(2) of the Federal Rules of Bankruptcy Procedure.[5] On June 2, 2014, Defendant filed a reply in support of the Motion (Doc. 144) (the "Reply") arguing that the new allegations in the Amended Complaint do not relate back under Rule 15(c), that Defendant has not waived the right to raise a statute of limitations defense, and that the deadline for objecting to Defendant's discharge cannot be extended pursuant to Rule 4004(b) because no "cause" exists and because Rule 4004(b) did not take effect until after Defendant filed his bankruptcy case.

On March 24, 2017, Former Plaintiff filed a *Motion to Substitute Party* (Doc. 173) (the "Substitution Motion"), which stated that on January 11, 2017, Former Plaintiff transferred her interest in this case to her son, J. Thomas McAfee III, in his capacity as Trustee of Marital Trust #2 (the "Transfer"). Additionally, on March 28, 2018, J. Thomas McAfee III filed in Defendant's bankruptcy case a *Notice of Transfer of Claim* (Doc. 153, Case No. 11-67522-LRC) stating that the Debt had been transferred to him by Former Plaintiff. The Court granted the Substitution Motion on September 29, 2020, and J. Thomas McAfee III ("Plaintiff") was substituted as plaintiff in this adversary proceeding. *See* Doc. 223.

---

[5] Former Plaintiff also filed in Defendant's bankruptcy case a *Motion for Extension of Time to Object to Discharge Pursuant to Rule 4004(b)(2)* (Doc. 67, Case. No. 11-67522-LRC) ("Motion for Extension of Time"), which Defendant opposes through a response in opposition (Doc. 81, Case No. 11-67522-LRC).

After a status conference held on May 21, 2020, the Court granted the parties an opportunity to update their briefing with respect to the Motion. *See* Doc. 213. On July 24, 2020, Defendant filed an updated brief in support of the Motion (Doc. 217) (the "Updated Brief in Support") wherein Defendant includes an additional reason for dismissing the Amended Complaint—that Plaintiff does not have statutory standing to object to Defendant's discharge under § 727(a) because he is not a "creditor" as defined in § 101(10).[6] On August 20, 2020, Former Plaintiff filed a response to the Updated Brief in Support (Doc. 219) (the "Updated Response") wherein she contends that Plaintiff is a creditor entitled to object to Defendant's discharge under § 727(a) notwithstanding the fact that he acquired the Debt after the Petition Date.

II.    Legal Standards

The Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. When considering whether to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true all factual allegations set forth in the complaint and, on the basis of those facts, determine whether the plaintiff is entitled to the relief requested. The Court must also draw all reasonable inferences in the light most favorable to the non-moving party. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); *Daewoo Motor America Inc. v. General*

---

[6] Since Defendant's argument is based on Plaintiff not meeting the statutory requirements to bring a § 727(a) claim against him, the Court interprets Defendant's argument as a lack of statutory authority to bring a claim, not a lack of constitutional standing such that this Court would lack subject matter jurisdiction over the claim. *See Matter of Pointer*, 952 F.3d 82, 86 (5th Cir. 1992) (analyzing constitutional standing and statutory standing separately).

7

*Motors Corp.*, 459 F.3d 1249, 1271 (11th Cir. 2007); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Grossman v. Nationsbank, Nat'l Ass's*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273, n.1 (11th Cir. 1999). Additionally, to dismiss a claim based on an affirmative defense, the Court must find that Defendant can "'establish the affirmative defense with certitude'" relying upon only the facts "'definitively ascertainable from the complaint and the other allowable sources of information.'" *In re Harding*, 2009 WL 161862, at *2 (Bankr. D. Mass. Jan. 22, 2009) (quoting *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006)).

III.    <u>Discussion</u>

As noted above, Defendant argues in his Updated Brief in Support that Plaintiff lacks statutory standing to object to his discharge under § 727(a) because he is not a "creditor" as defined in § 101(10). Section 727(c)(1) states that "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." Because Plaintiff is not the trustee or the United States Trustee, he may only object to Defendant's discharge if he qualifies as a "creditor." Section 101(10) defines "creditor," in relevant part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Since Plaintiff did not obtain the Debt until Former Plaintiff transferred her claims to him on January 11, 2017, which was after the Petition Date, Defendant argues that he was not the holder of any prepetition claim and, therefore, does not meet § 101(10)'s definition of a "creditor." In support of this argument, Defendant cites two cases: *In re Beugen*, 99 B.R. 961 (B.A.P. 9th Cir. 1989) *aff'd*, 930 F.2d 26 (9th Cir. 1991), and *In re Wood*, 2009 WL 1857409 (Bankr. N.D. Tex.

June 29, 2009).

In *Beugen*, the debtor moved to dismiss a complaint objecting to his discharge under § 727(a) on the grounds that the plaintiff lacked standing under § 727(c)(1) because he was not the original holder of the claims he asserted against the debtor's bankruptcy estate, but instead purchased the claims from the original creditors. *In re Beugen*, 99 B.R. at 963-64. The bankruptcy court in *Beugen* agreed with the debtor and stated that the plaintiff was "attempting to use the Court as a whipping post to inflict punishment on the defendant [] and [had] reached the point of becoming a vexatious litigant." *Id*. at 964. The bankruptcy court also noted that because "[a] large body of [the plaintiff's other] claims have previously been disposed of in this Court, [the plaintiff] is now purchasing claims of others apparently in an attempt to pursue litigation against the defendant." *Id.* Thus, the bankruptcy court held that the plaintiff did not have standing to object to the debtor's discharge under § 727(a) because "[t]he right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon a debtor." *Id.* On appeal, the Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's holding and stated that the bankruptcy court's findings with respect to the plaintiff's conduct in obtaining the claims were "accurately reflected in the record." *Id*. at 965.

Similarly, in *Wood*, an assignee of two prepetition claims filed a complaint seeking to revoke the debtor's discharge under § 727(d)(2). The debtor argued that the plaintiff did not have standing to seek revocation of his discharge under § 727(e), which provides that only a "trustee, a creditor, or the United States trustee" may seek revocation of a discharge

under § 727(d). The bankruptcy court in *Wood* agreed with the debtor and held that "[f]or the purposes of seeking revocation of discharge, the term creditor means the original pre-petition creditor. A debtor's discharge . . . 'is not a marketable commodity which may be purchased by one party from another in order to inflict punishment and discomfort upon the debtor.'" *In re Wood*, 2009 WL 1857409, at *5 (quoting *In re Beugen*, 99 B.R. at 965). The bankruptcy court also noted that the plaintiff bought the prepetition claims "for the sole purpose of attacking the Discharge" and that the lawsuit was "a punitive action [commenced] through use of purchased standing." *Id*.

In the Updated Response, Plaintiff argues that neither *Beugen* nor *Wood* are applicable because both of those cases involved facts where the respective plaintiffs purchased their claims with an improper and punitive motive. In the current case, Plaintiff contends that he had no improper motive in acquiring the claims. Rather, Plaintiff argues that the Debt and claims asserted in this adversary proceeding were the last remaining assets of the Estate of James T. McAfee, and Former Plaintiff, as Executor of the Estate, allowed those claims to be distributed to Marital Trust #2 in accordance with the terms of James T. McAfee's will. Plaintiff maintains that where there is no improper motive, the assignee of claims stands in the shoes of the assignor. Thus, Plaintiff contends that he has standing under § 727(c)(1) to seek denial of Defendant's discharge.

The Court agrees with Plaintiff that neither *Beugen* nor *Wood* are applicable as both of those cases involved facts where the plaintiff purchased prepetition claims "for the sole purpose of attacking [the debtor's d]ischarge" and "to use the Court as a whipping post to inflict punishment on the defendant." Here, there is nothing before the Court to suggest

that Plaintiff acquired the Debt for an improper purpose. Instead, it appears that the Debt was transferred to Plaintiff, in his capacity as Trustee of Marital Trust #2, for estate administration purposes. *See* Affidavit of Carolyn T. McAfee, Doc. 186, pp. 2-4; Affidavit of J. Thomas McAfee III, Doc. 187, pp. 2-4. Further, at least one bankruptcy court has held that an assignee of a prepetition claim that was assigned postpetition has standing under § 727(c)(1) to object to a debtor's discharge "[i]f the debtor is unable to demonstrate that the assignee had an improper purpose for acquiring the claim." *See In re Clegg*, 352 B.R. 912, 920-21 (Bankr. M.D. Ga. 2006) ("Although the creditor in *Ota* was a prepetition assignee and the creditor in *Beugen* was a postpetition assignee, the determinative factor in both cases was the motive of the creditor, not the timing of the assignment. If the debtor is unable to demonstrate that the assignee had an improper purpose for acquiring the claim, then the assignee steps into the shoes of the assignor. 'Neither the Bankruptcy Code nor the Bankruptcy Rules restrict the ability of an assignee to assert all the rights of a creditor.'") (internal citations omitted) (quoting *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 38 (Bankr. D.N.J. 1996)).

Defendant argues that the bankruptcy court in *Clegg* did not consider the meaning or construction of § 101(10)'s definition of a "creditor" and "wrongly considered 'improper purpose[s] or motivations'" in determining whether a postpetition assignment of a prepetition claim confers statutory standing upon the assignee to object to a debtor's discharge.[7] However, the bankruptcy court in *Clegg* did cite § 101(10) in stating that "[a]

---

[7] Defendant argues there is no need to look at any improper motives in this case because § 101(10)(A)'s definition of a "creditor" excludes assignees who acquire their claims postpetition.

creditor must hold a pre-petition claim." *See In re Clegg*, 352 B.R. at 920. Nonetheless, the Court is not persuaded that § 101(10)(A)'s definition of a "creditor" is limited to those who acquired their claims prepetition. Instead, the plain language of § 101(10)(A) makes clear that the claim itself—not any assignment of such claim—must "arise of at the time of or before the order for relief concerning the debtor." Construing this language to mean that any assignment of a prepetition claim must occur prepetition would contradict Rules 3002(e)(2) and (e)(4) which deal with transfers of claims *after* proof of the claim has been filed in a debtor's bankruptcy case. *See* FED. R. BANKR. P. 3002(e)(2), (e)(4). Further, postpetition assignments of prepetition claims are common practice, and the Court does not believe the assignees of such claims fail to meet the definition of a "creditor" as provided in § 101(10)(A). Thus, the Court agrees with the holding in *Clegg* that, absent a showing of an improper purpose or motive, the assignee of a prepetition claim "steps into the shoes of the assignor" and has standing under § 727(c)(1) to object to a debtor's discharge, even if the assignment of such claim occurred postpetition. Here, because no improper purpose or motive has been shown in connection with the Transfer, the Court finds that Plaintiff—as the holder of a prepetition claim against Defendant's bankruptcy estate—has standing under § 727(c)(1) to object to Defendant's discharge under § 727(a).

Having found that Plaintiff has statutory standing to object to Defendant's discharge under § 727(a), the Court must now consider Defendant's arguments that the new allegations asserted in the Amended Complaint are time-barred pursuant to Rule 4004(a), which states, in relevant part, that "[i]n a chapter 7 case, a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting

12

of creditors under § 341(a)." *See* FED. R. BANKR. P. 4004(a). Here, the meeting of creditors

in Defendant's chapter 7 bankruptcy case was held on July 19, 2011. Thus, the deadline

for creditors to object to Defendant's discharge was September 19, 2011—the day Former

Plaintiff filed the Initial Complaint. Because the Amended Complaint was filed after the

September 19, 2011, deadline, the new grounds for denial of Defendant's discharge are

time-barred unless: (A) the new allegations relate back under Rule 15(c) to the allegations

made in the Initial Complaint; (B) Defendant has waived his right to assert that the

Amended Complaint is time-barred; or (C) the time for objecting to Defendant's discharge

may be extended pursuant to Rule 4004(b)(2).

    a.  <u>Relation Back</u>

Plaintiff contends that the new allegations asserted in the Amended Complaint relate

back to the Initial Complaint under Rule 15(c), which provides, in relevant part, that: "[a]n

amendment to a pleading relates back to the date of the original pleading when . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out—or attempted to be set out—in the original pleading." As noted above,

the Initial Complaint sought denial of Defendant's discharge under § 727(a)(2) based only

upon the $3,300 Transfer made by Defendant to his wife shortly before the Petition Date

to avoid the funds being garnished by Plaintiff.[8] The Amended Complaint adds four

additional reasons to deny Defendant's discharge under § 727(a)(2): (1) diversion of

---

[8] As previously noted, the Initial Complaint also sought denial of Defendant's discharge under § 727(a)(7)
for committing acts, in connection with a case of an insider, referred to in §§ 727(a)(3), (a)(4), and (a)(5).
*See* Initial Complaint, ¶¶ 70-81. However, this claim is not relevant to the Motion as Plaintiff contends that
the new allegations in the Amended Complaint only relate back to the Initial Complaint's $3,300 Transfer
allegations.

approximately $1.7 million from the Terrace View sale proceeds by Defendant to his wife;
(2) diversion of another $257,256 from the Terrace View sale—the NVR funds—to
Shadrix Lane, P.C.; (3) transfer of $89,202.18 from the NVR funds to Smith Conerly, LP,
as well as the nondisclosure of this transfer by Defendant in his bankruptcy case; and (4)
concealment of assets in the Trust by Defendant.

Plaintiff argues that the new allegations in the Amended Complaint fill in additional
facts, learned during discovery, that further demonstrate "the same type of conduct set out
in the [Initial] Complaint, namely the transfer, removal, and concealment of [Defendant's]
property for the specific purpose of hindering and delaying creditors." Plaintiff further
argues that the new allegations "chronicle a pattern of deliberate transfers and
concealments occurring substantially contemporaneously with the $3,300 [T]ransfer
described in the [Initial] Complaint" and "are materially probative of [Defendant's] actual
intent at the time of the $3,300 [T]ransfer." Finally, Plaintiff contends that "[a]mendments
that amplify, expand, and elaborate on the general conduct [] relate back" to the Initial
Complaint and that "[f]rom the date the [Initial] Complaint was filed, Defendant has been
on notice that Plaintiff sought to deny his discharge based on his conduct, i.e., his deceptive
behavior, operations, and dealings, designed to hinder and delay creditors."

In response, Defendant argues that the new allegations in the Amended Complaint
do not relate back because they are "new grounds for objection to discharge based on []
entirely different transactions." Defendant contends that while the new allegations may
allege the same "type of conduct" set out in the Initial Complaint, a similar "type" of
conduct does not satisfy the same "conduct, transaction, or occurrence" requirement under

14

Rule 15(c). Defendant maintains that because there were no allegations in the Initial Complaint regarding the Terrace View Transfer, the NRV Transfer, the Smith Conerly Transfer, or that Defendant concealed assets in the Trust, these allegations constitute "substitute grounds for objections to discharge based on different transactions than those alleged in the [Initial] Complaint." Accordingly, Defendant argues that the Court should dismiss the new allegations made "outside the strict time limitations for the filing of objection to discharge" "given the 'strong policy reasons' in favor of a 'fresh start' for [] debtor[s]."

"As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts." *In re Universal Factoring Co., Inc.*, 279 B.R. 297, 303 (Bankr. N.D. Okla. 2002) (citing *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385–86 (5th Cir.1994)). "On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences" *Id.* However, since "the phrase 'conduct, transaction, or occurrence' found in Rule 15(c) is cast in the disjunctive," the allegations in the Amended Complaint "need not arise from the same transaction or occurrence attempted to be set forth in the [Initial] Complaint, so long as it springs from the same conduct." *Id.* at 307. Nonetheless, "[a]s many courts have recognized, the most important factor in determining whether a pleading relates back is 'whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading.'" *In re Mack Indus., Ltd.*, 2021 WL 192000, *2 (Bankr. N.D. Ill. 2021). Additionally, "[w]here there are a series of transfers, it is

15

necessary that the Court examine 'whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent transaction.'" *In re Bennett Funding Group, Inc.*, 275 B.R. 447, 451 (Bankr. N.D.N.Y. 2001) (quoting *Austin Driveway Servs, Inc.*, 179 B.R. 390, 396 (Bankr. D. Conn. 1995)).

Because the Initial Complaint and the Amended Complaint both allege that Defendant transferred funds shortly before the Petition Date with the intent to avoid the funds being garnished by Former Plaintiff, the Court finds that, viewing the allegations in the light most favorable to Plaintiff, the Terrace View Transfer, the NRV Transfer, and the Smith Conerly Transfer can be seen as part of a "common scheme," along with the $3,300 Transfer, to avoid Former Plaintiff's garnishments. *See In re Austin Driveway Servs, Inc.*, 179 B.R. at 397-98, n.4 (stating that "actions to avoid fraudulent transfers [] often involve a common scheme to defraud which provides a nexus for relation back" and that case law in this context "turns . . . on the existence or absence of an underlying common scheme or course of conduct which is the basis of the original action and links otherwise distinct transactions"); *see also Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009) (stating that "[c]ourts have recognized that where fraudulent transfers arise out of the same conduct and transaction there is a relation back" and "hold [that] the addition of new fraudulent transfers to a complaint 'relates back' if the fraudulent transfers arise from the same course of conduct as the original alleged fraudulent transfers") (citing

16

*In re Gerardo Leasing, Inc.*, 173 B.R. 379, 390-91 (Bankr. N.D. Ill. 1994)).[9]

The Initial Complaint alleged that Defendant made the $3,300 Transfer "shortly before the Petition Date," "in May 2011," "so that [the funds] would not be garnished" pursuant to a garnishment "filed by [Former] Plaintiff to collect the judgment [entered] against [Defendant] in the State Court Lawsuit." *See* Initial Complaint, ¶¶ 72-74. Thus, the Initial Complaint contended that the $3,300 Transfer was made "with [the] specific and actual intent to hinder and delay [Former] Plaintiff from garnishing the funds." *See id*. at ¶ 75. The Amended Complaint adds additional facts regarding Former Plaintiff's efforts to collect the Debt and states that "[Former] Plaintiff promptly began post-judgment collection" after obtaining her judgment against Defendant "including serving written discovery [on Defendant] and serving numerous garnishments." *See* Amended Complaint, ¶ 38. The Amended Complaint further alleges that "contemporaneously with [Former] Plaintiff's collection efforts," the Terrace View sale "was being coordinated" and that Defendant "was aware of [Former] Plaintiff's garnishment" when he "caused the $1.7 million Terrace View Funds to be transferred to [his] wife." *See id*. at ¶¶ 39, 48. Thus, the Amended Complaint alleges that the Terrace View Transfer was "done with [the] specific

---

[9] While this adversary proceeding is not an avoidance action under § 548 to recover fraudulent conveyances but is instead an action to deny Defendant his discharge under § 727(a)(2), the Court believes the situations are analogous because both fraudulent transfers and transfers or acts of concealment made with the "intent to hinder, delay, or defraud a creditor" involve fraudulent intent by Defendant. *See Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir. 1993) ("In order to deny a bankruptcy discharge, evidence of actual intent to defraud creditors must be shown.") (citations omitted)); *see also In re Everfresh Beverages, Inc.*, 238 B.R. 558, 574 (Bankr. S.D.N.Y. 1999) (stating that "[w]hen the allegation in the initial complaint alleges a single or series of transactions sounding in fraud, courts have struggled to find the appropriate balance between the certainty that statutes of limitations are intended to provide and recognizing the difficulty that plaintiffs often have in defining the extent and boundaries of fraudulent acts perpetrated against them" and agreeing that "the relation back standard should be read broadly in these circumstances." (citations omitted)).

intent to hinder [Former] Plaintiff" and "for the purpose of concealing [the Terrace View funds] from creditors. *See id.* at ¶¶ 27, 142.

Similarly, the Amended Complaint alleges that Defendant "took dramatic actions to conceal the NRV Funds from [Former] Plaintiff." *See id*. at ¶ 52. The Amended Complaint contends that "on April 20, 2011, [Defendant's] long-time law firm, Smith Conerly, LP had been served with a garnishment filed by [Former] Plaintiff, and Smith Conerly's answer to the garnishment stating whether it was holding [Defendant's] money or property [] was due on May 25, 2011." *See id*. at ¶ 54. "To prevent the NRV funds from being turned over to [Former] Plaintiff," the Amended Complaint contends that "it was imperative that the NRV Funds not be deposited either with Smith Conerly or into any account in [Defendant's] name." *See id*. at ¶ 55 (emphasis in original). Accordingly, the Amended Complaint alleges that Defendant, "assisted by his counsel, J. Nevin 'Huck' Smith, [] devised a plan to hide [Defendant's] NRV Funds in the trust account of another attorney at least until after May 25, 2011, so that Smith Conerly would not have to deliver the funds to [Former] Plaintiff." *See id.* Thus, the Amended Complaint contends that "on May 25, 2011," Defendant "transferred [the] $257,256 NRV Funds to the Trust account of Shadrix Lane for the specific purpose of avoiding [Former] Plaintiff's garnishment." *See id*. at ¶¶ 57, 147. The Amended Complaint then alleges that "[t]he very next morning, [on] May 26, 2011, Smith Conerly requested that Shadrix Lane return $89,202.18 of the NRV Funds to Smith Conerly." *See id*. at ¶ 58. According to the Amended Complaint, this request from Smith Conerly, LP was done after its answer to Former Plaintiff's garnishment was due on May 25, 2011. *See id*. at ¶¶ 55, 58. Thus, the Amended Complaint contends that both the

18

NRV and the Smith Conerly Transfers "demonstrate that [Defendant] consciously and knowingly sought to hide the NRV Funds to circumvent the garnishment." *See id*. at ¶ 59.

Because the Amended Complaint contends that the Terrace View Transfer, the NRV Transfer, and the Smith Conerly Transfer were all made with the intent of avoiding Former Plaintiff's garnishments, these allegations can be viewed as part of a "common scheme" with the $3,300 Transfer, which was also done with the "specific and actual intent to hinder and delay [Former] Plaintiff from garnishing the funds." All of these alleged transfers occurred after Former Plaintiff obtained a final judgment against Defendant in the State Court of Fulton County and began collection efforts on that judgment. Further, all of the transfers occurred around the same time period—i.e., "shortly before the Petition Date" or in May of 2011. Accordingly, the Court does not find that the Amended Complaint adds transfers that are "entirely different, in terms of both temporal and substantive elements," "substitutes for the original allegations," or "shifts to new ground in alleging fraudulent conduct on the part of [Defendant]." *See In re Young*, 428 B.R. 804, 811 (Bankr. N.D. Ind. 2010) (rejecting the plaintiff's relation back argument because "[t]he transactions and facts referenced in Count I of the original complaint and Counts II and III of the amended complaint are entirely different, in terms of both temporal and substantive elements," and there was "nothing in the original complaint which can be deemed to have placed Young on notice of the transactions which are the subjects of Counts II and III of the amended complaint"); *In re Dean*, 11 B.R. 542, 545 (B.A.P. 9th Cir. 1981) *aff'd*, 687 F.2d 307 (9th Cir. 1982) (stating that "[a]ny reading of the original complaint makes it evident that plaintiff has shifted to new ground in alleging fraudulent conduct on the part of Dean"); *In*

*re Bennett Funding Grp., Inc.*, 275 B.R. 447, 453 (Bankr. N.D.N.Y. 2001) (stating that "[r]ather than making the allegations in the Original Complaint more definite and precise in the Amended Complaint, [the] claims . . . of the Original Complaint have been abandoned completely by the Trustee in the Amended Complaint").

Instead, the Amended Complaint adds *additional examples* of how Defendant transferred and/or concealed assets, which were done for the same purpose as the $3,300 Transfer alleged in the Initial Complaint—to avoid Former Plaintiff's garnishing the funds. Thus, the Court finds that these additional transfers asserted through the Amended Complaint "can be seen as springing from the same underlying pattern of conduct that was alleged in the [Initial] Complaint." *See In re Universal Factoring Co. Inc.*, 279 B.R. at 307. Accordingly, the Initial Complaint "arguably put [Defendant] on notice that [Former Plaintiff] might amend [her] complaint to add additional legal theories or transfers" arising from the same conduct—i.e., additional transfers made by Defendant specifically to avoid Former Plaintiff's garnishments. *See id.*; *see also In re Juliet Homes LP*, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (finding that "[t]he original complaint [] gave the Movants notice that the Trustees might sue for transfers that were part of the same course of conduct," and that "the allegations of the Ponzi scheme gave reasonable notice that the Trustees would seek to recover any amounts that may have been transferred as part of that scheme"). For these reasons, the Court concludes that the Terrace View Transfer, the NRV Transfer, and the Smith Conerly Transfer "ar[ise] out of the same conduct. . . set out—or attempted to be set out—in the [Initial Complaint]" and, therefore, relate back to the Initial Complaint pursuant to Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure.

As for the Trust allegations and the allegations that Defendant failed to disclose or account for the Smith Conerly Transfer in his bankruptcy case, however, the Court does not find that these allegations are part of a scheme to avoid Former Plaintiff's garnishments. The Amended Complaint contends that the Trust was created on December 1, 1997, over a decade prior to Former Plaintiff obtaining a judgment against Defendant. *See* Amended Complaint, ¶ 66. Further, the Amended Complaint alleges that Defendant used the Trust to "divert[] the fruits of his labor" and to "hide the value of FCGI and the stream of income it may have generated *over the years*." *Id.* at ¶ 75-76 (emphasis added). Thus, the Amended Complaint does not contend that the Trust was created or used for the specific purpose of avoiding Former Plaintiff's garnishments, but instead generally alleges that Plaintiff hid his income and the value of his business ventures in the Trust "over the years." Accordingly, Defendant would not have been on notice by the $3,300 Transfer allegations that Former Plaintiff would amend the Initial Complaint to assert the Trust allegations. Therefore, the Court finds that the Trust allegations do not arise from the same conduct set out in the Initial Complaint and, as a result, concludes that the Trust allegations do not relate back to the Initial Complaint.

Similarly, regarding the allegations that Defendant failed to disclose or account for the Smith Conerly Transfer in his bankruptcy case, this failure to disclose could not have been done for the "specific purpose of avoiding [Former] Plaintiff's garnishment" because once Defendant filed bankruptcy, the automatic stay would have prevented Former Plaintiff from garnishing any property of Defendant or otherwise attempting to collect the Debt. *See* § 362(a). While the failure to disclose the Smith Conerly Transfer may constitute

21

a concealment of the funds made with the intent to hinder, delay, or defraud Former
Plaintiff, it could not have been done with the intent to avoid Former Plaintiff's
garnishments. Thus, because the only alleged motivation for the $3,300 Transfer was to
avoid Former Plaintiff's garnishments, the Court also finds that the allegations in the
Amended Complaint that Defendant failed to disclose or account for the Smith Conerly
Transfer in his bankruptcy case do not relate back to the $3,300 Transfer allegations
asserted in the Initial Complaint.

      b.  <u>Waiver</u>

Having found that not all of the new allegations asserted in the Amended Complaint
relate back to the Initial Complaint under Rule 15(c), the Court must now consider whether
Defendant has waived his right to assert that Plaintiff's amended § 727(a) claims are time-
barred pursuant to Rule 4004(a). As previously noted, Plaintiff contends that because
Defendant did not object to Former Plaintiff's Motion for Leave to Amend on the grounds
that the new allegations Former Plaintiff sought to add were time-barred, Defendant has
waived his right to do so.

As the Supreme Court has noted, the time limits prescribed by Rule 4004(a) to bring
an objection to discharge are not jurisdictional and, thus, can "be forfeited if the party
asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 454-
56 (2004). Rule 8(c) of the Federal Rules of Civil Procedure, made applicable to this
adversary proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure,
generally requires that a statute of limitations defense "must be raised in an answer or
responsive pleading." *See id.* at 458-59; Fed. R. Civ. P. 8(c). Rule 7(a) of the Federal Rules

of Civil Procedure, made applicable to this adversary proceeding by Rule 7007 of the

Federal Rules of Bankruptcy Procedure, states that "pleadings" include "a complaint, [an]

answer, [an] answer to a counterclaim or cross-claim, [a] third party complaint, [an] answer

to a third-party complaint, and [a] reply to an answer." *See Chavarria v. Hamlet*, 2010 WL

1461040, *3 (N.D. Cal. April 12, 2010) (citing FED. R. CIV. P. 7(a)). Thus, as stated by the

*Chavarria* court, "[a] response to a motion to amend is clearly not a responsive pleading

within the meaning of Rule 7(a), and therefore respondent was not required to raise its

affirmative defenses in that response in order to avoid an implied waiver." *Id.* (citing

*Morrison v. Mahoney*, 399 F.3d 1042, 1047 (9th Cir. 2005)). Accordingly, the Court finds

that Defendant has not waived his right to raise the time limits of Rule 4004(a) by failing

to oppose Former Plaintiff's Motion for Leave to Amend.

   c. <u>Motion for Extension of Time</u>

   Finally, having found that Defendant has not waived his right to assert that the

Amended Complaint is time-barred pursuant to Rule 4004(a), the Court must now consider

whether Plaintiff may extend the time for filing an objection to discharge pursuant to Rule

4004(b)(2). As previously noted, Plaintiff maintains that even if the allegations in the

Amended Complaint do not relate back to the Initial Complaint, Defendant's Motion

should nonetheless be denied because "cause" exists under Rule 4004(b)(2) to extend the

time for filing objections to Defendant's discharge. Since the Court has found that the

allegations regarding the Terrace View Transfer, the NRV Transfer, and the Smith Conerly

Transfer all relate back to the Initial Complaint, the issue of extending time is only relevant

to the Trust allegations and the allegations that Defendant failed to disclose or account for

the Smith Conerly Transfer in his bankruptcy case.

As an initial matter, Defendant argues that Plaintiff cannot rely on Rule 4004(b)(2) because it did not become effective until December 1, 2011, which was after the Petition Date. In its order adopting Rule 4004(b)(2), as well as other amendments to the Federal Rules of Bankruptcy Procedure, the Supreme Court stated that the amendment "shall take effect on December 1, 2011, and shall govern in all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." *See In re Lusane*, 2013 WL 662695, at *1 (Bankr. D.D.C. Feb. 25, 2013). Defendant contends that Rule 4004(b)(2) should not apply retroactively to this case because Plaintiff has failed to show how its application would be "just and practicable." In response to this argument, Plaintiff notes that Rule 4004(b)(2) was adopted to address the gap period dilemma[10] and thus argues that its application to the current case would not be unjust. Further, Plaintiff maintains that he is "unaware of any reason" why applying the rule to this case would be impracticable. The Court agrees with Plaintiff and sees no reason why retroactive application of Rule 4002(b)(2) would be either unjust or impracticable in this case.

Next, Defendant argues that Rule 4004(b)(2) cannot save the untimely allegations in the Amended Complaint because, as he contends, Plaintiff has not shown that "cause" exists to extend the time for filing objections to discharge or that Former Plaintiff filed the

---

[10] The gap period dilemma refers to the situation where "strict adherence to the language of § 727(d)(1) would prevent creditors from seeking revocation of a debtor's discharge based upon fraud or misconduct occurring after the bar date has passed, but before the court enters the discharge." *In re Lusane*, 2013 WL 662695, at * 1.

Motion for Extension of Time "promptly" after learning of the allegations made through the Amended Complaint. Rule 4004(b) provides that:

> (1) On Motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired.

> (2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

*See* Fed. R. Bankr. P. 4004(b)(2). Thus, "to prevail on a motion under Rule 4004(b)(2), a party must show that: (1) cause exists to extend the time to object to discharge; (2) the proposed objection to discharge is based on facts that, had they been discovered after discharge, would provide a basis for revocation under section 727(d) of the Code; (3) the facts were not known prior to the time for objection had expired; and (4) the motion seeking an extension was filed promptly after discovery of the facts." *See In re Bressler*, 601 B.R. 318, 330 (Bankr. S.D.N.Y. 2019). Additionally, "while courts may differ on the precise standard to use when determining cause under Rule 4004(b)(1), they agree on requiring proof of diligence from the movant in investigating the debtor's financial affairs prior to granting an extension." *In re Aloia*, 496 B.R. 366, 380 (Bankr. E.D. Pa. 2013)

Defendant argues that Plaintiff cannot show "cause" for the extension of time because Former Plaintiff did not act diligently in investigating his financial affairs. In support of this argument, Defendant points to the fact that Former Plaintiff did not conduct a Rule 2004 examination prior to the September 19, 2011, deadline to file objections to his

25

discharge, despite the Chapter 7 Trustee's pointing out at the § 341 meeting of creditors that an examination of Defendant's wife would be necessary. Additionally, Defendant argues that Former Plaintiff did not "promptly" file the Motion for Extension of Time after learning of the allegations made in the Amended Complaint. Defendant notes that the Motion for Leave to Amend was not filed until December 31, 2013, and the Motion for Extension of Time was not filed until May 5, 2014, despite Former Plaintiff's deposing Defendant's wife on June 25, 2012, and deposing Defendant on June 19, 2013. *See* Docs. 122, 143. Further, Defendant contends that a complaint filed by the Chapter 7 Trustee in Case No. 13-05211-LRC on June 13, 2013, set out the same Trust and failure to disclose the Smith Conerly Transfer allegations made by Plaintiff in the Amended Complaint. *See* Doc. 1, Case No. 13-05211-LRC, ¶¶ 143, 153-159.

In response, Plaintiff argues that there were legitimate reasons why the Motion for Leave to Amend was not filed until December 31, 2013, none of which show that Former Plaintiff unreasonably delayed in asserting the newly discovered allegations or failed to act diligently in investigating Defendant's financial affairs. For example, Plaintiff contends that despite requesting to depose Defendant's wife on November 28, 2011, her failure to respond to the request and subsequent motions to quash subpoenas caused the delay in taking her deposition. *See* Doc. 73, Case no. 11-67522-LRC, pp. 6-8. Further, Plaintiff argues that based on Defendant's wife's deposition testimony, it became necessary to depose Mr. Al Scott, a business colleague of Defendant, and then, based on Mr. Scott's testimony, it became necessary to depose Jones and Kolb, P.A., Defendant's accounting firm. *See id*. at p. 8. Finally, Plaintiff maintains that the complexity of the case "involving

26

complex transactions spanning twenty [] years, two separate bankruptcy cases, multiple interrelated and layered entities, complicated tax structures, and numerous discovery disputes" warranted the time it took to discover and articulate the allegations made through the Amended Complaint. *See id.* at p. 11.

While the Court recognizes that the Chapter 7 Trustee's complaint filed in Case No. 13-05211-LRC on June 13, 2013—over six months prior to Former Plaintiff's filing of the Motion for Leave to Amend—references both the Trust allegations and the allegations that Defendant failed to disclose the Smith Conerly Transfer in his bankruptcy case, the Court believes it is nonetheless necessary to give Plaintiff an opportunity to present evidence on whether Former Plaintiff "promptly" filed the Motion for Extension of Time after learning of the facts giving rise to these allegations. Similarly, regarding whether Former Plaintiff exercised "diligence" in investigating Defendant's financial affairs prior to the September 19, 2011, deadline for filing objections to Defendant's discharge, the Court also finds it necessary to hear evidence on this point. *See In re Berger*, 2012 WL 2254324, at *3 (Bankr. D.N.D. June 15, 2012) (stating that "[t]he determination of whether cause exists [under Rule 4004] is a fact-driven analysis that must be decided on a case-by-case basis"). Accordingly, before the Court can determine whether the Trust allegations and the allegations that Defendant failed to disclose the Smith Conerly Transfer are time-barred, the Court must hold an evidentiary hearing on the Motion for Extension of Time.[11]

---

[11] In addition to the allegations made in the Amended Complaint, the Motion for Extension of Time contends there are additional reasons that would warrant revocation of discharge under § 727(d): (1) false statements made by Defendant in his *Declaration in Support of Opposition to Plaintiff's Motion for Summary Judgment* (Doc. 129) (the "Declaration"); and (2) the failure to turnover to the Chapter 7 Trustee postpetition proceeds, products, offspring, rents, or profits received by Defendant on account of his NRV

## CONCLUSION

In sum, the Court finds that Plaintiff has standing, under § 727(c)(1), to object to Defendant's discharge under § 727(a) and that the allegations made in the Amended Complaint regarding the Terrace View Transfer, the NRV Transfer, and the Smith Conerly Transfer all relate back to the Initial Complaint. Thus, the Court finds that Defendant's request to dismiss these allegations should be denied. Regarding the Amended Complaint's Trust allegations and allegations that Defendant failed to disclose or account for the Smith Conerly Transfer in his bankruptcy case, the Court finds that these allegations do not relate back to the Initial Complaint and are thus time-barred pursuant to Rule 4004(a), unless Plaintiff's Motion for Extension of Time is granted. Since the Court must hold an evidentiary hearing on the Motion for Extension of Time to determine whether it should be granted, the Court finds that its ruling on Defendant's request to dismiss the Trust allegations and the allegations that Defendant failed to disclose or account for the Smith Conerly Transfer should be deferred until after the Motion for Extension of Time is resolved. Accordingly, for the reasons stated herein,

IT IS HEREBY ORDERED that the Motion is **DENIED** with respect to the allegations in the Amended Complaint regarding the Terrace View Transfer, the NRV Transfer, and the Smith Conerly Transfer;

---

limited partnership interest. *See* Motion for Extension of Time, ¶¶ 25-51. However, Former Plaintiff stated in her reply in support of the Motion for Extension of Time that she "filed [the] Motion to Extend in the Bankruptcy Case as an alternative if . . . the Court found merit in [Defendant's] Motion to Dismiss." *See* Doc. 73, Case No. 11-67522-LRC, p. 3. Thus, it is unclear whether Plaintiff intends to seek leave to file a second amended complaint in this adversary proceeding based upon the statements made in the Declaration and Defendant's alleged failure to turnover property of the estate acquired postpetition.

IT IS FURTHER ORDERED that the Court's ruling on the Motion's request to dismiss the allegations in the Amended Complaint regarding the Trust and Defendant's failure to disclose or account for the Smith Conerly Transfer in his bankruptcy case is **DEFERRED** until after Plaintiff's Motion for Extension of Time is resolved;

IT IS FURTHER ORDERED that the Court, by a separate order, will set a scheduling conference in Defendant's bankruptcy case (Case No. 11-67522-LRC) with regard to the Motion to Extend Time.

**END OF DOCUMENT**

**Distribution List**

**James L. Paul**
Chamberlain, Hrdlicka, White
46th Floor
191 Peachtree Street NE
Atlanta, GA 30303-1410

**Kevin R. Armbruster**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street, NE
Atlanta, GA 30303

**Jason C. Grech**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street, NE
Atlanta, GA 30303

**Derek S. Littlefield**
Cushing Morris Armbruster Montgomery LLP
Suite 4500
191 Peachtree Street, N.E.
Atlanta, GA 30303

**Gary W. Marsh**
Dentons US, LLP
Suite 5300, One Peachtree Center
303 Peachtree Street
Atlanta, GA 30308

**David E. Gordon**
Dentons US LLP
Suite 5300
303 Peachtree Street, NE
Atlanta, GA 30308

**J. Carole Thompson Hord**
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, NE
Suite 800
Atlanta, GA 30309-4516

**Karen Fagin White**
Cohen Pollock Merlin & Small
Suite 1600
3350 Riverwood Parkway
Atlanta, GA 30339-6401

**Johannes S. Kingma**
Carlock, Copeland & Stair, LLP
191 Peachtree Street, NE
Suite 3600
Atlanta, GA 30303-1740